IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANIEL CAHILL,                              )
                                            )
       Plaintiff,                     )
                                            )
v.                                          )   13-cv-361
                                            )
THOMAS DART in his official                 )   Judge John Z. Lee
capacity, C. MARTINEZ, E.N.                 )
NIEVES, K.P. LAYTON, A. CHEW,               )
                                            )
       Defendants.                    )

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Daniel Cahill's Objections to the March 4, 2016, Report and Recommendation of Magistrate Judge Cox regarding his motion to sanction Defendants for destruction of evidence [103]. Although Judge Cox recommended granting the motion, Cahill contends that the sanction she proposed is inadequate. For the reasons given below, the Court agrees and adopts a modified version of the Report and Recommendation.

## BACKGROUND

Cahill's claims in this case—which include state claims for false arrest and malicious prosecution and a federal claim for violation of the Fourth Amendment—are based on the Defendants' accusations that he possessed cocaine at a County lockup. Cahill was initially arrested on December 15, 2011, by Defendants Martinez and Nieves, police officers with the Cook County Sheriff's Office, for driving on a

suspended license. The officers then transported him to the lockup in Maywood for processing. Everyone agrees that they arrived there at approximately 9:00 p.m.

But the parties sharply disagree over what happened while Cahill was at the lockup. Defendant Layton testified in a deposition for this case that he patted Cahill down shortly after he was brought in and that, during the patdown, he saw Cahill drop a small, tissue-wrapped, white package to the floor. Layton Dep. at 96–97 [115]. Layton explains that he then took Cahill to another part of the lockup for photos and fingerprinting, leaving the package lying on the floor. *Id.* at 103–04. After that, Layton brought Cahill back to where the package still lay and searched him again. *Id.* at 107–08. Only after this search did Layton pick up the package he says he had seen Cahill drop earlier. *Id.* at 100. He looked inside and then brought it to Martinez. *Id.* at 112.

Martinez confronted Cahill with the suspected cocaine. Resp. Mot. Sanctions, Def.'s Ex. B, "Martinez Dep." at 50:2. Cahill initially denied that it was his but, according to Martinez, confessed upon being told that surveillance cameras would have captured him dropping it. *Id.* at 50:4–50:15.

Cahill denies dropping the package, denies that he was in possession of cocaine at any time while at the lockup, and denies that he ever said otherwise. Compl. ¶¶ 7–13. In Cahill's telling, he expressed relief when Martinez brought up the cameras, believing that the video footage would prove his innocence.

Based on the officers' accounts of what happened at the lockup, Cahill was charged with felony possession of cocaine. His criminal defense attorney, Robert

2

Schrimple, acted quickly after the arrest to obtain all video footage of his client's time at the lockup. He sent a subpoena to the Cook County Sheriff's Office in Maywood, *see* Mot. Santions, Pl.'s Ex. F, Subpoena, and also provided a copy to the County's legal department, Hr. Tr. at 130:7–130:10.

Lieutenant Don Milazzo, who was in charge of the Maywood lockup at the time, also took some action to preserve the video. On January 10, 2012, a few days before the video was scheduled to be destroyed, he completed a "Request for Hold of Video Surveillance," seeking the preservation of "all video of Prisoner Daniel Cahill who arrived in the Maywood 24 Hr. L/U at 2100 hrs [9:00 p.m.] on 15 Dec. 2011, and left the facility at 0740 hrs on 16 Dec. 2011." Reply Br., Pl.'s Ex. C, "Request for Hold." Milazzo does not recall why he completed the hold request, *see* Hr. Tr. at 50:8–50:10, and he concedes that he never followed up to confirm that his hold request had been honored, *id.* at 52:7–52:10.

Schrimple did follow up after serving his subpoena—many times—but no one in the Sheriff's Office or legal department could give him any information. *Id.* at 130:15–132:13. Then, in mid-February, a lawyer for the County sent him a letter representing that the video from the time Cahill was at the Maywood lockup was no longer in existence. Mot. Sanctions, Pl.'s Ex. G, "Feb. 14 Letter." The lawyer explained that "all video had been destroyed by the time the Sheriff's Office was able to determine the video was under the control of the Cook County Facilities Management Department." *Id.*

But it turned out that some video of Cahill from the lockup that night still existed after all. Officer Martinez had submitted a request on December 16, 2011, for video of Cahill discarding the cocaine, which he said happened at "approximately 2120-2140 hrs [9:20 p.m. to 9:40 p.m]. *See* Resp. Mot. Sanctions, Def.'s Ex. C, "Martinez Request." In response to this request, James Collins, a technician from the Facilities Department, transferred some video onto his laptop computer and then onto a DVD. Martinez picked up the DVD and, at some point, turned it over to the State's Attorney's office.

The video Martinez sent the prosecutor covers from 9:16 p.m. to 9:24 p.m. Mot. Sanctions, Pl.'s Ex. A, "Video." It does not show Cahill dropping anything. Instead, when the video begins, the small white package is already on the floor, and Cahill is nowhere to be seen. Fifteen seconds in, Cahill is brought across the room from somewhere off camera and placed right next to the package. He seems to be completely oblivious to its presence. Layton then thoroughly searches him while both men ignore the package. Upon completion of the search, Layton kicks the package, picks it up, and opens it before leaving the room with it.

After viewing this video, the Assistant Cook County State's Attorney handling the case concluded that the state would not be able to prove the charges against Cahill. The charges were dismissed, and Cahill brought this lawsuit.

In his Motion for Sanctions for Spoliation of Evidence [74], Cahill argues that Defendants had a duty to preserve the video footage from his time in the lockup and intentionally failed to do so because the video would have proven his innocence. He

4

was prejudiced by the destruction of the evidence because, he contends, the full video would have shown that someone other than him dropped the cocaine. (Apparently other arrestees had been through that area of the lockup shortly before him.) The motion proposes sanctions ranging from default judgment to an adverse inference instruction and a prohibition on Defendants' use of certain evidence. Cahill also seeks attorney fees related to the filing of the motion.

Magistrate Judge Cox held a hearing on Cahill's motion. Numerous witnesses testified, including James Collins, the technician who acted on Martinez's request for the video. Collins testified that he included footage from before the requested time of 9:20 because the white package was already on the floor by 9:20. Hr. Tr. at 95:4–10. He testified that he saw video of Cahill dropping the package at 9:14, but he could not explain why the video begins at 9:16, a time when the package also was already on the floor. *Id.* at 103:1–3. For some reason, he did not check the copy he made to make sure that it contained this crucial event. *Id.* at 112:1–6.

In her Report and Recommendation, Judge Cox explained that sanctions for spoliation of evidence are appropriate when a party was under a duty to preserve evidence, breached that duty through conduct that rises to the level of fault, and thereby caused prejudice to the party seeking sanctions. Cox R & R at 7–8. She then concluded that (1) Defendants were under a duty to preserve the evidence; (2) their allowing the video to be destroyed was grossly negligent, though not intentional based on the evidence presented; (3) Cahill "suffered substantial prejudice" from the loss of this "essential" evidence; and (4) a sanction is appropriate. *Id.* at 8–13.

5

Based on these findings, Judge Cox determined that the appropriate sanction would be to bar Defendants "from making any arguments or presenting evidence stating that the lost portion of the videotape showed Plaintiff dropping cocaine on the Maywood Lockup floor, including, but not limited to, Collins's notes or any testimony from Collins relating to what he saw on the video other than the portion of the video that was preserved." *Id.* at 14. Layton, Judge Cox specified, would still be able to testify that he personally saw Cahill drop the cocaine. *Id.* No greater sanction—for example an adverse inference instruction—would be appropriate because Cahill, Judge Cox concluded, had offered no evidence that Defendants intentionally allowed the video to be destroyed. Judge Cox did not address Cahill's request for attorney fees.

## ANALYSIS

Cahill filed timely objections to Magistrate Judge Cox's Report and Recommendation [103]. When a party objects to a magistrate judge's report and recommendation on a dispositive matter, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b). Whether to impose sanctions is a dispositive matter, necessitating *de novo* review. *See Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 869 (7th Cir. 1996) (explaining that "a request for sanctions, regardless of when made, is a dispositive matter").

Conducting *de novo* review requires the Court "to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). But the Court is not required to conduct a new evidentiary hearing. *United States v. Raddatz*, 447 U.S. 667 (1980) ("It should be clear that on these dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing. We find nothing in the legislative history of the statute to support the contention that the judge is required to rehear the contested testimony in order to carry out the statutory command to make the required 'determination.'"); *Pinkston v. Madry*, 440 F.3d 879, 893 (7th Cir. 2006). After conducting the required review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**A. Adverse Inference Instruction**

In his Objections, Cahill first argues that the sanction Judge Cox recommended is insufficient to counter the prejudice he will suffer from the loss of video that he says would have shown someone else dropping the cocaine. Objections at 5–7. Without the full video, he points out, the jury will be left to decide whether to believe Layton's story that he saw Cahill drop the cocaine sometime before the existing video starts or to believe Cahill that he never dropped the cocaine at all. *Id.* And he challenges Judge Cox's finding that Defendants did not intentionally allow the video to be destroyed, stressing that they failed to preserve it despite being well aware of the video's great importance. *Id.* As an additional sanction, Cahill proposes

7

that the jurors (1) be informed that Defendants had a duty to preserve the video but failed to do so and (2) be instructed to presume that the missing video would have been favorable to Cahill. Objections at 5–9.

Defendants, who did not object to Judge Cox's Report and Recommendation on any ground, respond that the sanction she recommends is adequate. To go further, they contend, would unfairly punish Defendants for flaws in Cook County's video preservation policies. Resp. Objections at 7–8. The jury, they propose, should be informed simply "that only a portion of the video exists," and each party should then be allowed to present "their theory of what is on the missing video." *Id.* at 8.

Before addressing Cahill's objections, the Court notes that Defendants' suggestion that each party present "their theory of what is on the missing video" is at odds with Judge Cox's Report and Recommendation. Presenting their theory about the missing video is precisely what Judge Cox recommends prohibiting Defendants from doing. She would allow Layton to testify that he saw Cahill drop the cocaine, but she would not allow any defense witness to testify that the missing video would have backed up Layton's version of events. Again, Defendants filed no objections to Judge Cox's Report and Recommendation.

Returning to Cahill's objections, the Court, having conducted an independent review, adopts Judge Cox's Report and Recommendation with modifications. In light of Judge Cox's uncontested finding that Cahill has been greatly prejudiced by the loss of the video, the Court concludes that, at the very least, the jury should be

8

informed that the video is missing because Defendants failed to fulfill their duty to preserve it.

But whether Cahill is entitled to the adverse inference instruction he seeks is less clear. Rule 37(e)(2), which governs sanctions for "failure to preserve electronically stored information," specifies that such an instruction would be appropriate only if Defendants intentionally allowed the video to be destroyed. *See* Fed. R. Civ. P. 37(e)(2) ("only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may [the Court] . . . instruct the jury that it may or must presume the information was unfavorable to the party"). Although the Court disagrees with Judge Cox that Cahill presented no evidence of intent,[1] the question is a close one.

The Court would decide that close question now except that the destruction of the video in this case is closely tied to Cahill's malicious prosecution claim.[2] If the video would have proven Cahill's innocence, and Defendants intentionally allowed it to be destroyed during his prosecution, the video's destruction would be part of their plot to frame him. This means that evidence not directly tied to the fate of the video could nevertheless illuminate Defendants' intent regarding the video. (Judge Cox understandably confined the hearing she held to evidence more directly tied to the

---

[1] Defendants' inaction despite their knowledge of the video's importance could suggest intent, and Martinez's request for video beginning at approximately 9:20, rather than at 9:00 when he brought Cahill in, could be seen as an indication that he did not want to capture the full story.

[2] Defendants contend that Cahill may not make such an argument to the jury because he has not brought a spoliation claim. Resp. Objections at 8. But the video's destruction is obviously quite relevant to Cahill's malicious prosecution claim.

9

video.) As a result, the Court believes that the best course is for the jury to decide the question of intent.

Cahill, of course, is not required to argue to the jury that Defendants intentionally destroyed the video. If he chooses not to, he will still benefit from the sanction Judge Cox fashioned and the Court's conclusion above that the jury should be told that the video is missing because they failed in their duty to preserve it. But if he does choose to make this argument at trial, the jurors will be instructed that, if they are persuaded that the destruction was intended to deprive Cahill of the evidence, they must presume the lost evidence would have been unfavorable to Defendants. This approach is called for by the 2015 Advisory Committee Notes to Rule 37,[3] and it is the approach the Court believes to be appropriate in this case.

**B. Attorney's Fees**

Cahill also renews his request for attorney's fees. Objections at 9–12. Defendants respond that attorney's fees should not be imposed because the video was lost years ago. Objections Resp. at 10. They also suggest that courts should only impose fees for the willful disobedience of a court order. *Id.*

---

[3] The Committee explained:

> If a court were to conclude that the intent finding should be made by a jury, the court's instruction should make clear that the jury may infer from the loss of the information that it was unfavorable to the party that lost it only if the jury first finds that the party acted with the intent to deprive another party of the information's use in the litigation. If the jury does not make this finding, it may not infer from the loss that the information was unfavorable to the party that lost it.

Under Rule 37, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5); *see also Rickels v. City of S. Bend, Ind.*, 33 F.3d 785, 786 (7th Cir. 1994) (explaining that under Rule 37(a)(4), which is now 37(a)(5), "the loser pays"). There are exceptions to this rule, but none of them are applicable to this case.

Because the Court grants Cahill's motion for sanctions, he is entitled to attorney's fees incurred in making the motion. To be clear, however, Cahill is entitled to fees only in connection with the original motion itself—not fees incurred in connection with the objections now under consideration.

## **CONCLUSION**

For the reasons given, the Court adopts Magistrate Judge Cox's Report and Recommendation [101], with modifications. Judge Cox's proposed sanction will be imposed. Additionally, the jury will be informed simply that Defendants had a duty to preserve the video but did not. Alternatively, Cahill may argue to the jury that the failure to preserve the video was intentional, in which case the jury will be instructed as described above.

**SO ORDERED**         ENTER: 12/2/16

*[signature: John Z. Lee]*

_____
**JOHN Z. LEE**
**United States District Judge**

11